## STATE v DICKINSON

Ohio Appeals, 2nd Dist, Franklin Co

No 3403. Decided Nov 13, 1941

Agnes B. Dickinson, Columbus, for defendant-appellant.

Ralph J. Bartlett, Pros. Atty., Columbus; Forrest F. Smith and T. Vincent Martin, Asst. Pros. Attys., Columbus, for plaintiff-appellee.

## OPINION

**BY THE COURT:**

This cause is before this Court on appeal by the defendant-appellant from a judgment of the Court of Common Pleas based uopn a verdict of the jury by which she was found guilty as charged in an indictment for embezzlement. The indictment is to the effect that Agnes B. Dickinson, between the 5th day of May, 1940, and the 15th day of December, 1940, within Franklin County, being the guardian of the estate of Annie Burgy, an incompetent person, by appointment of the Probate Court of said county, money of the value of $10,000.22 of the personal property belonging to said estate of Annie Burgy did unlawfully and fraudulently embezzle and convert to her own use, without the assent of the Probate Court of Franklin County, which said property had then come into the possession and care of the said Agnes B. Dickinson by virtue of her appointment as guardian of said Annie Burgy, an incompetent person. A motion for new trial was filed and overruled and error prosecuted to this Court.

The transcript was filed in this court on June 30, 1941. On September 2, 1941, the appellant filed her assignment of errors and after stating the history of the case specified six assignments of alleged errors which may be epitomized as follows:

1. The trial court erred in overruling the motion to quash the indictment.

2. The trial court erred in refusing the demand for additional particulars seasonably made by the defendant.

3. The trial court erred in the admission of evidence over the objection of the defendant.

4. The court erred in excluding evi-

dence sought to be introduced by this defendant.

5. The argument on behalf of the state went outside the record.

6. The trial court erred in overruling said defendant's motion for a new trial.

We will sketch the brief in support of the several assignments so stated.

The brief does not follow closely the assignments of errors, but nevertheless the errors complained of will be considered in connection with the argument of appellant.

The appellant correctly quotes the statute, §12467, defining embezzlement and asserts that the elements which the State must allege and prove to maintain a case against her are:

(1) That she is one of a named class, to-wit, a guardian.

(2) That in such capacity she did one of three acts:

(a) Embezzled or converted to her own use;

(b) Fraudulently took or made away with; or

(c) Secreted with intent to embezzle or convert to her own use.

(3) That the res is anything of value.

(4) That it came into her possession by virtue of her appointment as guardian.

(5) That the total value of the property embezzled in the same continuous employment is thirty-five dollars or more, to constitute a felony.

Appellant states that it can not be urged too strongly that these are vital to the State's case and that without proof beyond a reasonable doubt the state must fail, and that the statute must be subject to strict construction. Appellant then discusses separately each of the five elements, with additional assignments, but not in the order stated in her assignments of error.

Her first question relates to whether or not she was a guardian of the incompetent peson, insisting that her guardianship should be shown by an official act of the court. She states that the Probate Court is empowered to appoint deputies who, when acting within the scope of their employment may perform the duties assigned to them, but that where the deputy lacks the requisite qualification no criminal act can arise out of his official action. She points out that her appointment as guardian was purportedly made by a deputy in the Probate Court whose term of office had expired under a previous appointment and who had not been reappointed, and that the best that could be asserted in his behalf was that he was a de facto officer, which she asserts is not sufficient to empower him to legally qualify a guardian, and that where a deputy pretends to act in a legal capacity but at the time lacks appointment, such deputy is merely a private citizen or at best a de facto officer.

This is an ingenious argument, but it does not appeal to this Court. Defendant-appellant was appointed as guardian by the Probate Judge and not by a deputy, and the Probate Judge's authority is not questioned. The fact that she may have taken an oath administered by a deputy who had not been reappointed by the Probate Judge would be of no avail to her since it did not affect the fact that she was the guardian and that letters of guardianship had been issued to her. As a matter of law her appointment begins with her application under oath, reciting the facts that called for a guardian, and the Court thereupon proceeds to appoint the guardian. There is no provision of the statute, so far as has been pointed out to us, that requires that a guardian, after having made such application under oath, must take an oath in order to qualify as such guardian. The facts appear clearly in this case to the effect that, after appointment, she came into possession of certain large sums of money which are conceded to have belonged to an incompetent person over whose estate the court had appointed her as guardian. We are not impressed with the claim that in spite of the fact that she had the money in her possession by virtue of her appointment, she can not be

found guilty of embezzlement simply because she took an oath administered by a deputy who had not been reappointed under the then existing term of the Probate Judge. To establish such a principle would be to say that where a person had in control moneys belonging to an estate under the appointment of the Probate Court, such person could safely embezzle the same if he could detect some error in his appointment.

The appellant has cited us to certain decisions touching the crime of perjury, pointing out that it has been held that, if the oath taken was before a person not qualified to administer an oath, the defendant could not be held guilty of perjury. The difference in the matter is apparent when we consider that the offense here charged is taking money, while the offense in the perjury case is swearing falsely. A person could not swear falsely unless he had taken the oath before some one qualified to administer the oath. The difference is apparent and the principle announced in perjury cases does not control the embezzlement by a guardian appointed under the Ohio statute.

We find no merit in the first assignment of error.

In the second assignment appellant urges that under the statute, before she may be found guilty the State must prove either (a) that the defendant embezzled or converted to her own use; or (b) fraudulently took or made away with; or (c) secreted with **intent** to embezzle or convert to her own use. The appellant asserts that the State relied upon proposition (a), that she embezzled the money, and that it must therefore be confined to this allegation of the indictment. She asserts that it never was her intent to deprive her ward of anything belonging to her. She points out the fact that at the time she took charge of Mrs. Burgy, that person was in a deplorable condition due to neglect and ill health, and that the defendant gave long hours for many weeks to personally supervise and reclaim the health of the neglected woman, and that it later became clear

that for her own safety and the safety of others she should be placed in the state hospital, which the defendant did.

It is claimed that the State must show the guilty intent upon the part of the defendant, and that the defendant was privileged to deny the guilty intent, and that it was a question for the jury as to whether she had such guilty intent. She urges that if the offense charged against her is merely conversion the State is confronted with an insurmountable obstacle so far as convicting on such a charge.

The Court in his general charge showed care and skill in charging on the subject of intent. In defining the elements of embezzlement the court, after instructing the jury in reference to conversion which must be proved beyond a reasonable doubt, charged:

"You will note that one of the elements which I pointed out to you is that of an intention to convert property to the defendant's own use. The question of what the intention of the guardian was is a question of fact which you must determine from all the facts and circumstances in the case."

Further upon this question, after the case had been submitted to the jury they, through the bailiff, communicated in writing with the judge propounding this question, "This jury wants more information relative to the word intent". Whereupon the court told the jury that he had already instructed it with reference to the element of intent as an element of the offense. He then quoted the statute in reference to one who "fraudulently takes or makes away with or seeks with intent to embezzle or convert to his own use anything of value", etc. and further stated that the statute provides that to constitute the offense the money must be converted to the use of the defendant **with intent** to embezzle or convert to his own use. The Court further proceeded:

"Now, more generally on the question of intent, which is one of the elements in this offense, I charge you that intent is a subjective matter; that is to say, it is a state of mind, and can only be determined as to its existence or absence by words or acts or conduct of the persons charged therewith. So in determining the question of intent in this case. if you come to that consideration, you will consider all facts and circumstances connected with the transaction; you will bear in mind that when an act is proven as knowingly done, intent may be inferred. In other words, intent follows the logical consequences of the act; and I charge you that if you find that the defendant did concert these monies to her own use, and that all of the ingredients of the offense were present as I have instructed you with reference to the other elements of the offense, then you may infer from the fact that the monies converted to the use of the defendant, were converted with the intent to appropriate them to her own use and purposes."

We believe this special instruction in answer to the request of ▆▆▆▆▆ ▆ the jury is a correct exposition of the law as to intent.

The appellant states in her brief that it is readily apparent that intent is vital to a fair determination of the case and asserts that while in certain cases intent is inferable from the doing of the act, since the offense charged against the defendant in this case is embezzlement, then specific or criminal intent by competent evidence must be shown and it is urged that it was relevant for the defendant to state what she contends her intent was and it was for the jury to believe or disbelieve her after they had heard her story and in the light of the instructions as to the law. There may be merit in appellant's contention, yet we are of the opinion that she was not deprived of any right to present such facts and circumstances that would tend to show that her appropriation of the money was without criminal intent.

It is difficult to follow the reasoning of the appellant as presented under this assignment of error, but when we examine the evidence and study the charge of the court, we are convinced that there is no prejudicial error discernible in this assignment.

In her next assignment, she asserts that the state must show that the money came into her possession by virtue of her appointment and that as the deputy of the Probate Judge had never been qualified during the term of the Judge at which the transaction occurred, she was not a guardian that the money therefore, did not come into her possession as such and that she could not be convicted under the statute. We have already dwelt upon this matter and find that there is no merit in this claim.

Her next assignment is to the effect that there must be a finding of the value of the money embezzled of over $35.00 in order to justify a felony conviction. We do not follow the argument of counsel in this matter because the indictment alleges an embezzlement of over $10,000.00 and the jury's verdict finds her guilty of embezzlement as charged in the indictment and the amount of money embezzled at $10,800.22.

The next error complained of is the overruling by the court of her objection to the reading by the court stenographer of his notes of her statements taken in Probate Court on December 13, 1940, predicating the objection on three grounds: (1) That it would constitute the defendant's taking the witness stand which she had a constitutional right not to be forced to do; (2) The testimony which he read was taken under oath and under duress after a capias for the arrest of the defendant had been issued and after defendant knew such capias had been issued; (3) That it was not a voluntary statement. She quotes in defense of her position that §13444-3 GC, provides that on the trial of a criminal case a person charged with an offense may, at his

own request, be a witness, but not otherwise and she further quotes **Art. I, Sec. 10, Ohio Constitution,** to the effect that no person shall be compelled in any criminal case to be a witness against himself and she therefore asserts that the court erred in admitting the testimony over her objection.

Most of these objections can be disposed of by the fact that at the trial the defendant went upon the stand and adopted in toto as her evidence the transcript made by the stenographer of her statement before the Probate Court on December 13, 1940. The entire testimony offered by her on the trial appears on page 61 and is to the effect,

"Agnes B. Dickinson called on her own behalf, being duly sworn, testified as follows:

Mrs. Dickinson: Now, if the Court please, I am offering myself as a witness. As a matter of direct examination, let the record show that if questioned today in the same manner as the witness was questioned on December 13, 1940, in the Probate Court, the answers would be the same."

There was no cross examination.

It seems to us that she thereby clearly adopts as her testimony the evidence of her statements made on December 13th as testified to by the court stenographer. These statements related to her entire conduct of the fund in question and clearly demonstrate that she there admitted that she had converted to her own use the amount found by the jury to have been embezzled by her and that she did this while she was acting as a guardian of Annie Burgy. We find no error ██ in the ruling of the Court in admitting the transcript of her testimony on December 13th, 1940.

The defendant sought to introduce testimony of the sheriff to the effect that he had a capias for her arrest at the time she testified and also the testimony of the agent for the insurance company that he had charged her with having embezzled the money belonging to the estate. The court sustained the objection to the testimony of both of these witnesses. We do █ not believe that this was prejudicial since it does not show any duress of coercion which would render her admissions incompetent in the trial. On Dec. 13th, 1940, she frankly confessed that she had taken the money and used the same for her own purposes, without authority of the Probate Court and that she could not restore the same except a small fraction thereof. We believe that this testimony was entirely competent and that neither the statute nor her constitutional rights were invaded by the submission of this evidence.

Her next complaint is that an adequate bill of particulars was not furnished although requested. We have examined the application for a bill of particulars and the bill of particulars as presented. It was an all-inclusive statement of █ all competent matter and the court did not err in overruling her motion for an amendment to this bill of particulars. It is true there was matter not stated therein which she claims was incumbent upon the State to prove, as for example, that she had been properly appointed as guardian. The State did prove this, but, of course, did not admit that the lack of qualification upon the part of the deputy would invalidate the appointment. The State showed that the appointment was made after Mrs. Burgy had been declared to be an incompetent upon the application of a niece and that Mrs. Dickinson was appointed as guardian upon her own application and that she qualified as such by giving the requisite bond and filed her inventory and took charge of the estate of the incompetent and proceeded to maladminister it. We think the bill of particulars was adequate and that no error occurred in the action of the court.

Her next assignment is that the court erred in overruling the defendant's motion to quash. She advances

no pertinent argument upon this point and we conclude that the motion to quash was properly overruled.

Defendant charges that the verdict is not responsive to the indictment. She points out that the indictment charges that the defendant "did unlawfully and fraudulently embezzle and convert to her own use * * *"; and that the verdict of the jury is, "Guilty of embezzlement as she stands charged in the indictment", and she urges that the verdict in a criminal case must be responsive to the charge. That is quite true, but we fail to see in what respect it was not responsive to the charge, and this assignment is overruled.

The next assignment is that the State did not prove a case of embezzlement in that it is charged that the defendant did unlawfully and **fraudulently embezzle** and convert to her own use. She claims that the word "fraudulently" puts the question of intent squarely in issue and relies upon **15 O. Jur. 625**, to the effect, that in the crime of embezzlement a criminal intent is necessary and that the crime is generally complete when the intent **fraudulently** to appropriate concurs with the possession of the property involved, and claims that in order to make a guardian guilty of embezzlement he must, at the time of the conversion of the property, have the criminal intent to convert it to his own use and cites a case holding that if an employee spends money of his employer in his possession and accounts at the proper time by the payment of other money of equal value, no offense has been committed, and that there must be shown to be an intention to deprive the owner of the property permanently. We think we have sufficiently discussed this matter as to intent in the former portion of this opinion and we simply state that we find no merit in this complaint.

In her next assignment she alleges that the entire proceeding from its inception is so tinctured with fraud and malice as to deny its validity as a legal proceeding. The defendant's complaint is that she was not permitted to show that contrary to the custom in the Probate Court she was required to make an accounting before the statutory period for the filing of her formal account and that she was not permitted to show that the agent of the bonding company had charged her with embezzlement. Her position seems to be that a fiduciary might use the funds belonging to a ward, without criminal consequences, so long as he had the intention of restoring it before the day of accounting. Such a position is, of course, untenable. If that be true, every guardian could venture his ward's estate in doubtful transactions and if he were successful and had the ability to restore the estate at the time the account was made, he would be free from guilt, and that he would only be guilty under the statute if he failed to restore the fund before the day of accounting. This would be entirely too dangerous a doctrine to be sanctioned. The statute condemns the conversion of the property to the use of the fiduciary with the intent to convert it to his own use. The act of embezzlement is complete the moment the official converts the money to his own use even though he then has the intent to restore it. Few embezzlements are committed except with the full belief upon the part of the guilty person that he can and will restore the property before the day of accounting occurs. There is where the danger lies and the statute is passed in order to protect the public against such venturesome enterprises by people who have money in their control.

We find no error in this assignment.

Complaint is also made that the name of Judge McClelland to her letters of appointment is affixed with a rubber stamp. She re-asserts that the appointment was really made by Harold Pickering, the deputy who had not been reappointed. While it may be true that the paper issued to her was stamped with a rubber stamp instead of being signed manually by the Probate Judge, yet it does appear in evidence that the Probate Judge in per-

son and in his official capacity signed the journal covering the appointment of Mrs. Dickinson.

We find no error in this assignment.

The defendant has filed a supplemental assignment of errors to the effect that the verdict is not responsive to the indictment; that the State did not and could not prove a case of embezzlement; that the entire proceeding from its inception is so tinctured with fraud and malice as to deny its validity as a legal proceeding. We think we have discussed the matters thus presented by the supplemental assignment at sufficient length in the above decision.

## CONCLUSION.

We have been much distressed to be compelled to arrive at a decision adverse to the claim of this appellant who has suffered so grievously from her indiscretion, but our sympathy does not permit us to support her in her ill-conceived claims that she has asserted in her proceeding before this court. The truth seems to be that for some reason she could not resist the temptation of appropriating to her own use large sums of money far beyond her nominal income, which she has stated were used for normal and office expenses. We are not inclined to follow suspicions, but have the distant feeling that some place there was a leakage by which there was an abnormal drain upon her resources and that she took an easy way to meet this demand. With regret but with confidence we arrive at the conclusion that there was no error manifest in the trial of this defendant and that the judgment of the court should be affirmed.

Judgment accordingly.

GEIGER, PJ , BARNES & HORNBECK, JJ., concur.